

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

March 6, 2007

The Honorable Susan D. Reed
Bexar County Criminal District Attorney
Bexar County Justice Center
300 Dolorosa, Fifth Floor
San Antonio, Texas 78205-3030

Opinion No. GA-0527

Re: Whether a machine that records a player's winnings onto a stored-value debit card is a "gambling device" for purposes of section 47.01(4)(B) of the Penal Code  (RQ-0529-GA)

Dear Ms. Reed:

You ask about an amusement machine requiring the player to pay money in order to play.[1] You inform us that the machine "requires a player to create an electronic account with the machine operator." Request Letter, *supra* note 1, at 1. The player can accumulate winnings, which are "recorded in the account[,] and the player is given a stored-value card" in an amount of the accumulated winnings. *Id.* You describe how a player can then use the stored-value card to purchase merchandise. *See id.* Noting that the Texas Supreme Court has determined that a machine rewarding players with a gift certificate to be used for merchandise is a gambling device,[2] you inquire whether "[i]n light of the difference between a stored-value debit card and a gift certificate, . . . an amusement machine that issues a stored-value debit card [is] excluded from the definition of gambling device." *Id.* at 2.

"As early as 1861, the Texas Constitution prohibited most types of gambling." *Hardy v. State*, 102 S.W.3d 123, 130 (Tex. 2003) (citing TEX. CONST. of 1861, art. VII, § 17). Pursuant to the constitutional mandate to "pass laws prohibiting lotteries and gift enterprises," the Legislature enacted chapter 47, Texas Penal Code, which makes gambling a criminal offense. TEX. CONST. art. III, § 47(a); *see* TEX. PENAL CODE ANN. §§ 47.01–.10 (Vernon 2003). In Texas, a person commits an offense if the person "plays and bets for money or other thing of value at any game played with cards, dice, balls, or any other gambling device." TEX. PENAL CODE ANN. § 47.02(a)(3) (Vernon 2003). It is also a criminal offense for a person to "knowingly own[], manufacture[], transfer[], or possess[] any gambling device" designed for gambling purposes. *Id.* § 47.06(a). A "gambling device" is defined as

---

[1]*See* Letter and Brief from Honorable Susan D. Reed, Bexar County Criminal District Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Sept. 5, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter and Brief, respectively].

[2]*See Hardy v. State*, 102 S.W.3d 123, 132 (Tex. 2003).

> any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance. The term:
>
> > (A) includes, but is not limited to, gambling device versions of bingo, keno, blackjack, lottery, roulette, video poker, or similar electronic, electromechanical, or mechanical games, or facsimiles thereof, that operate by chance or partially so, that as a result of the play or operation of the game award credits or free games, and that record the number of free games or credits so awarded and the cancellation or removal of the free games or credits; . . .

Id.§ 47.01(4) (Vernon 2003). In 1993, the Legislature added an exception to the definition.[3] *See* Act of May 31, 1993, 73d Leg., R.S., ch. 774, § 1, 1993 Tex. Gen. Laws 3027, 3027. The exception, commonly known as the fuzzy animal exception,[4] provides that a gambling device:

> > (B) does not include any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

TEX. PENAL CODE ANN. § 47.01(4)(B) (Vernon 2003). Your specific question focuses on paragraph (B) and whether the amusement machine and its reward as you describe it falls within the exception. *See* Request Letter, *supra* note 1, at 1.

You state that the machine in question operates like a traditional "eight liner." *See id.* An eight liner is an electronic device, resembling a slot machine, on which a person wins by "matching symbols in one of eight lines—three horizontal, three vertical, and two diagonal." *Hardy*, 102 S.W.3d at 125. Eight liners record points won or credits. *See id.* at 126; *State v. One Super Cherry Master Video 8-Liner Mach.*, 55 S.W.3d 51, 54 (Tex. App.—Austin 2001) (describing operation of

---

[3]"Paragraph (B) was introduced in Senate Bill 522, which amended section 47.01(4) and became effective August 30, 1993. Yet when the new Penal Code became effective on September 1, 1994, it did not contain paragraph (B). Consequently, the Legislature re-enacted the amendment in 1995." *Hardy*, 102 S.W.3d at 131, n.5 (citations omitted); *see also* Tex. Att'y Gen. Op. No. DM-466 (1998) at 1-2.

[4]*See Fifty Six (56) Gambling Devices v. State*, No. 07-03-0132-CV, 2004 WL 635429, at *2 (Tex. App.—Amarillo 2004, no pet.) (not reported in S.W.3d) (referring to section 47.01(4)(B) as the fuzzy animal exception).

eight liners), *rev'd*, 102 S.W.3d 132 (Tex. 2003). Upon completion of play, the player or the operator pushes a button on the machine, which cancels the existing credits and issues some form of indicator as to the number of points or credits earned, which in turn equates to money. *See Hardy*, 102 S.W.3d at 126; *One Super Cherry Master Video 8-Liner Mach.*, 55 S.W.3d at 54. With regard to the machine about which you ask, the value of the money accumulated is recorded on a stored-value card, which can be redeemed for merchandise at various stores. *See* Request Letter, *supra* note 1, at 1.

You correctly note that the Texas Supreme Court ruled that gift certificates are not "noncash merchandise prizes" within the exception and that machines that issue them are gambling devices. *See id.* at 2. In *Hardy v. State*, the Texas Supreme Court considered whether eight-liner machines that issued gift certificates fell within the gambling device exception. *See Hardy*, 102 S.W.3d at 125. The machines in question produced tickets that could be exchanged for gift certificates redeemable for merchandise at Wal-Mart and Sam's Club or for credits to play at another machine. *See id.* at 126. The eight liners in the case did not award prizes, toys, or novelties, and the awarded gift certificates were not redeemable solely for such items, so the question for the court was whether a gift certificate itself was a noncash merchandise prize. *See id.* at 131 (stating that the parties agreed a "gift certificate is not a toy or novelty"). The court defined cash as "ready money (as coin, specie, paper money, an instrument, token, or anything else being used as a medium of exchange)" or "money or its equivalent paid immediately or promptly after purchasing" and then defined "noncash" simply as not cash. *See id.* Critical to the court's analysis was the fact that the gift certificates "were used as a medium of exchange at various retail outlets." *Id.* The court observed that the gift certificates were the equivalent of money, noting that the denomination of the certificate coincided with the denomination of paper bills and that they were easily converted to cash. *See id.* at 131–32. The court stated that if the "reward operates in the same manner as legal tender in a retail establishment, it does not qualify as a noncash merchandise prize, toy or novelty item." *Id.* at 132. Finally, the court held that "because the eight liners . . . rewarded the players with 'cash' or its equivalent, the machines do not satisfy the section 47.01(4)(B) exclusion." *Id.*

In *Hardy*, the court's holding rested on the premise that the item rewarded by the machine, a gift certificate, was used as a medium of exchange. Because the gift certificates were a cash equivalent, they were not "noncash" merchandise prizes. *See id.* Similarly, the stored-value cards you describe, despite any restrictions and limitations on ease of use, are used as a medium of exchange. The amount of value stored on the card equates to an amount or value that can be exchanged for merchandise. *See* Request Letter, *supra* note 1, at 1. In other words, even with a requirement to present identification or a personal identification number, the stored-value card "operates in the same manner as legal tender in a retail establishment." *Hardy*, 102 S.W.3d at 132.[5]

---

[5] You suggest our conclusion in Attorney General Opinion GA-0341 (2005), that a prepaid credit card was not a negotiable instrument under the Charitable Raffle Enabling Act, would direct another result here. *See* Brief, *supra* note 1, at 1–2. The question in Attorney General Opinion GA-0341 was whether a prepaid credit card was "money" as the term "money" was defined by the Charitable Raffle Enabling Act. *See* Tex. Att'y Gen. Op. No. GA-0341 (2005) at 2 (construing section 2002.002, Occupations Code). By contrast, here we examine the Penal Code's term "noncash," as construed by the Texas Supreme Court in the absence of a statutory definition.

Such a stored-value card, like a gift certificate, is a money equivalent and does not constitute a "noncash merchandise prize." Accordingly, a machine that issues a stored-value card enabling the purchase of merchandise does not fall within the exception of section 47.01(4)(B) and is a gambling device.[6]

---

[6]We do not here consider a stored-value card that is redeemable solely for noncash merchandise "prizes, toys, or novelties" in accordance with section 47.01(4)(B). However, in addition to our conclusion that the amusement machine at issue does not satisfy the section 47.01(4)(B) exception, we note that in a prior opinion this office concluded that section 47.01(4)(B) is unconstitutional. *See* Tex. Att'y Gen. Op. No. DM-466 (1998) at 3. We also note that a bill now pending before the Eightieth Legislature would eliminate such constitutional infirmities by, among other changes, removing the fuzzy animal exception entirely. *See* Tex. H.B. 330, 80th Leg., R.S. (2007).

## S U M M A R Y

A stored-value card enabling the purchase of merchandise is a medium of exchange within the definition of cash and therefore does not constitute a "noncash merchandise prize" within the exception of section 47.01(4)(B), Penal Code. Eight-liner machines rewarding play with such a stored-value card are gambling devices.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee