**Susan Lea ELMORE, Appellant,**

v.

**The STATE of Texas, State.**

**Nos. 2–01–508–CR to 2–01–510–CR.**

Court of Appeals of Texas,
Fort Worth.

Aug. 21, 2003.

---

Richard D. Davis, Austin, for appellant.

Bruce Isaacks, District Attorney, Kathleen Walsh, Assistant District Attorney, Jonnie Cleveland, Assistant District Attorney of Denton County, Denton, Matthew Paul, State Prosecuting Attorney, Austin, for State.

Panel A: DAY, LIVINGSTON, and DAUPHINOT, JJ.

## OPINION

SAM J. DAY, Justice.

A jury convicted Appellant Susan Lea Elmore of using real estate or a building or a room or other property as a gambling place, namely, a place used for the operation of gambling devices. The jury assessed her punishment at one year's confinement in jail, suspended for two years. The jury also assessed a fine. The trial court sentenced Appellant accordingly. The trial court sentenced Appellant accordingly. Appellant brings four issues on appeal, arguing that the trial court erred in denying a hearing to test the validity of the search warrant affidavit, in failing to suppress the fruits of an invalid search warrant, in sustaining the State's objection to a defense exhibit, and in failing to provide a proper limiting instruction in the court's charge. Because we hold, under the rule of optional completeness, that the trial court abused its discretion in sustaining the State's objection to Appellant's exhibit, we reverse the trial court's judgments and remand these causes to the trial court for a new trial.

### FACTUAL BACKGROUND

On January 2, 2001, pursuant to a search warrant, Lewisville police seized 100 video gaming machines commonly known as "eight-liners," gift certificates, pictures, and other documentation, books, and records from a business known as Treasure City Games. Based upon the evidence seized, Appellant was charged with fifteen counts of possession of a gambling device or equipment, the offense of keeping a gambling place, and the offense of gambling promotion. Appellant pled not guilty to all charges against her. Extensive evidence was presented by both the State and Appellant relating to the character and use of the video machines seized. Based upon the evidence presented, Appellant was convicted by a jury of all the charges. Appellant does not challenge the sufficiency of the evidence to support her convictions.

### SEARCH WARRANT

■ We will address Appellant's second issue first. In Appellant's second issue, she challenges the sufficiency of the affidavit supporting the search warrant on the ground that the affidavit failed to establish probable cause that an offense had been committed. The argument is based on the premise that the devices described in the affidavit do not meet the definition of gambling devices.[1] Statements contained in the affidavit, Appellant argues, are conclusory statements that do not support probable cause.

■ A search warrant must be supported by an affidavit setting forth substantial facts establishing probable cause for its issuance.[2] For probable cause to exist, an officer must have reasonable and trustworthy knowledge of facts and circumstances, sufficient in themselves, to warrant a reasonably cautious person to believe that a particular individual has either committed or is committing an offense.[3] In evaluating whether probable cause existed for the issuance of a warrant, appellate courts must assess the totality of the circumstances presented within the four corners of the affidavit.[4]

In the pertinent portions of the affidavit supporting the search warrant in the cases now before us, the affiant stated,

> Affiant has been in the establishment approximately 10 times between the dates of June 9, 2000 and January 1, 2001.

> On each occasion, Affiant placed U.S. currency into the money receptacles of electronic video gambling devices, including, but not limited to FRUIT BONUS, CHERRY MASTER 96, TREASURE 2000, SUPER POKER, MAGIC TOUCH, TREASURE QUEST. As a result of inserting the money in these devices, your Affiant received credits, which were displayed on the video monitor of each device. Affiant proceeded to

---

1. *See* TEX. PENAL CODE ANN. § 47.01(4) (Vernon 2003).

2. TEX.CODE CRIM. PROC. ANN. art. 18.01(a), (b) (Vernon Supp.2003); *Robuck v. State,* 40 S.W.3d 650, 653 (Tex.App.-San Antonio 2001, pet. ref'd).

3. *Amores v. State,* 816 S.W.2d 407, 413 (Tex. Crim.App.1991); *Torrez v. State,* 34 S.W.3d 10, 17 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd).

4. *Jones v. State,* 833 S.W.2d 118, 123 (Tex. Crim.App.1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993); *Lagrone v. State,* 742 S.W.2d 659, 661 (Tex. Crim.App.1987), *cert. denied,* 485 U.S. 937, 108 S.Ct. 1115, 99 L.Ed.2d 276 (1988); *see Illinois v. Gates,* 462 U.S. 213, 228–29, 103 S.Ct. 2317, 2326–27, 76 L.Ed.2d 527 (1983); *State v. Duncan,* 72 S.W.3d 803, 807 (Tex. App.-Fort Worth 2002, pet. dism'd, untimely filed); *Wynn v. State,* 996 S.W.2d 324, 326 (Tex.App.-Fort Worth 1999, no pet.).

bet according to how machine was configured.

. . . .

Under 47.01(4)(A), these devices, wagered on by your Affiant, have the ability to record and cancel credits. Posted odds on the devices, as well as on the electronic screen, give the player an[ ] expectation of winning a greater amount tha[n] 47.01(4)(B) allows. Several times during the course of the investigation, Affiant placed bets on these devices and won greater than ten times the amount of his wager or five dollars, whichever was less. Further, 47.01(4)(B) states that to be an amusement machine the contrivance rewards the player exclusively with noncash merchandise, prizes, toys, or novelties, or a representation of value redeemable for those items. Your Affiant was awarded tickets, which were redeemed for gift certificates, which does not meet the qualification as a noncash merchandise prize, toy, or novelty. Further, this gift certificate could be redeemed for cash to further play or wager on the gambling devices.

We have closely examined the affidavit supporting the search warrant in these cases. Even though the affidavit states conclusions, it nevertheless adequately sets out sufficient facts to allow the examining magistrate to determine whether the affiant's conclusions are accurate under the law.

Section 47.01(4)(B) provides that a gambling device

does not include any electronic, electro-mechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.[5]

Appellant argues that the facts the affiant relies on to show that the machines are gambling devices show, instead, that they fall within this exclusion. Since the trial of these cases, the Supreme Court of Texas has ruled on this issue:

The exclusion requires that the machine at issue reward the player *"exclusively* with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items." Tex. Penal Code § 47.01(4)(B) (emphasis added). Under the statute, once cash is awarded, it does not matter whether the player deposited the cash directly into the machine or whether an attendant performed this task. Cash to be used for play on another machine is not a noncash merchandise prize, toy, or novelty. If tickets are exchanged for cash, regardless of whether that cash is used to play another machine, the exclusion does not apply. We leave open the possibility that additional play through some other method may not violate section 47.01(4). But in this case, the machines did not reward the players with representations of value redeemable for noncash merchandise prizes. Thus, as a matter of law, the eight-liners at issue do not meet the section 47.01(4)(B) exclusion and were subject to forfeiture or destruction as gambling devices.[6]

The machines in the cases before us yielded tickets redeemable for gift certificates that in turn could be exchanged for cash.

---

5. *See* Tex. Penal Code Ann. § 47.01(4)(B).

6. *Hardy v. State,* 102 S.W.3d 123, 132 (Tex. 2003).

Consequently, the machines do not fall within the statutory exception; they are gambling devices as a matter of law.[7] Accordingly, the affidavit sufficiently shows the commission of a criminal offense. We overrule Appellant's second issue.

## FRANKS HEARING

In her first issue, Appellant claims that the trial court erred in denying her a hearing to test the validity of the search warrant affidavit. Specifically, Appellant claims that she was entitled to a *Franks* hearing because the affidavit that she submitted with her motion to suppress showed that the search warrant was based on false information.[8] Appellant claims that the officer's affidavit used to justify the search warrant in this case, has a number of false statements, and those statements were made with knowledge of their falsity or a in a reckless disregard for the truth of the statements.

Under *Franks v. Delaware,* the Supreme Court held that a defendant must make a substantial preliminary showing that a false statement, made knowingly, intentionally, or with reckless disregard for the truth, was included in the search warrant affidavit and that the false statement was necessary to the finding of probable cause to cause the trial court to hold a hearing regarding the issue.[9] In order to obtain a *Franks* hearing, a defendant must challenge specific sections of the search warrant affidavit, accompany those allegations of falsity with an offer of proof stating the supporting reasons, and show that

when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support issuance of the warrant.[10]

In Appellant's affidavit to support her motion to suppress, she specifically asserted that the police affidavit falsely states that the play of the devices registered credits towards winning something of value in violation of section 47.02, that the exception of 47.01(4)(B) did not apply, that rewards given by the devices exceeded the statutorily acceptable value set forth under Section 47.01(4)(B), that the tickets awarded by the devices could be redeemed for items that did not meet the exception of 47.01(4)(B), and that odds were posted on the machines that reflected their illegality. Appellant claims that these statements are incorrect.

Because the machines in question are gambling devices as a matter of law and do not come within the exclusion to the definition of a gambling device in 47.01(4)(B), the affidavit supporting the search warrant was not false when it claimed that Appellant owned and operated gambling devices which did not fall under any exceptions.[11] Therefore, the only fact in the police affidavit that could be false was whether Appellant had posted odds on the gambling machines. If we excluded this statement from the affidavit, probable cause would still remain. Therefore, a *Franks* hearing was not required under these circumstances.[12] We overrule Appellant's first issue.

7. *See id.*

8. *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).

9. *Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676; *Carroll v. State,* 911 S.W.2d 210, 218 (Tex.App.-Austin 1995, no pet.).

10. *Dancy v. State,* 728 S.W.2d 772, 781 (Tex. Crim.App.) *cert. denied,* 484 U.S. 975, 108

S.Ct. 485, 98 L.Ed.2d 484 (1987); *Ramsey v. State,* 579 S.W.2d 920, 922 (Tex.Crim.App. 1979).

11. *See Hardy,* 102 S.W.3d at 125.

12. *Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676; *Dancy,* 728 S.W.2d at 781.

## RULE OF OPTIONAL COMPLETENESS

 In her third issue for each case, Appellant complains that the trial court abused its discretion in excluding a letter she wrote in response to a letter written to her by the police chief of the City of Lewisville, Texas. The chief's letter was admitted into evidence. Rule 106 of the Texas Rules of Evidence provides:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may at that time introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.[13]

Similarly, rule 107 provides:

When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given.[14]

These principles comprise the rule of optional completeness, which was designed to "guard against the possibility of confusion, distortion, or false impression that could rise from use [the] of an act, writing, conversation, declaration, or transaction out of proper context."[15]

In the instant cases, the trial court, over Appellant's objection, admitted the letter from Chief McFadden. The letter provided notice that Appellant was operating gambling devices in her place of business. The final paragraph stated,

As the Chief of Police, I strongly suggest the voluntary removal or re-configuration of all 'gambling devices' within the deadline, thereafter I intend to pursue vigorous enforcement including but not limited to the seizure of said devices and filing charges against any persons found in violation.

The return at the bottom of the letter showed that it was delivered to Appellant. In response, Appellant offered Defendant's Exhibit Number One, her reply to Chief McFadden's notice letter, faxed to him two months before the search warrant was executed. The State objected to the letter on the grounds of hearsay, and the trial court sustained the objection. The excluded letter provided:

Dear Chief McFadden,

Please be advised that Treasure City Games and its game technicians have reconfigured the video games currently located at 201 S. Mill Street, Suite 101, Lewisville, Texas. The games are full scale, with game counts, and conform with Chapter 47 of the Texas Penal Code.

Treasure City Games will re-open for business at 10:00 a.m. Thursday, November 2, 2000.

Please let us know if you have any questions.

Appellant argues that the trial court erred in excluding the letter because it completed the communication between the parties. We agree. Excluding Appellant's letter gave rise to a strong possibility that the jury could form a false impression regard-

---

**13.** Tex.R. Evid. 106.

**14.** Tex.R. Evid. 107.

**15.** *Livingston v. State,* 739 S.W.2d 311, 331 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988).

ing her intent.[16] Consequently, the trial court abused its discretion by excluding Appellant's reply letter.

Appellant argues that the harm to her is unquestionable. She argues that

- the erroneous ruling left a false impression with the jury on which the State capitalized;
- the State repeatedly argued that Appellant had done nothing in response to Chief McFadden's notice letter, unfairly prejudicing the jury; and
- the exclusion of the letter deprive her of "probative and essential evidence concerning the element of intent" as well as a mistake of fact defense.

■■■■■ Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgments. As Justice Gardner of this court has explained,

> Where erroneous exclusion of evidence is the result of misapplication of the rules of evidence and its admission is not claimed to be required by the United States or state constitutions, we analyze harm under rule of evidence 103(a), which provides that error may not be predicated upon a ruling that admits or excludes evidence unless a "substantial right" of the party is affected. TEX.R. EVID. 103(a); *Potier v. State,* 68 S.W.3d 657, 666 (Tex.Crim.App.2002). The standard is the same as that under rule 44.2(b). TEX.R.APP. P. 44.2(b); *Potier,* 68 S.W.3d at 666. A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *Johnson v. State,* 43 S.W.3d 1, 3–4 (Tex.Crim.App.2001).

In assessing the likelihood that the error adversely affected the jury's decision, we consider everything in the rec-

ord, including all evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might have been considered in connection with the other evidence. *Morales v. State,* 32 S.W.3d 862, 867 (Tex.Crim. App.2000). We may also consider the State's theory of the case, any defensive theories, closing arguments, and voir dire. *Id.*[17]

As Appellant points out, the State argued repeatedly that Appellant and her husband failed to respond to Chief McFadden's letter. For example, during the State's closing argument, the prosecutor argued,

> You know, Jimmy and Susan Elmore were put on notice with a letter from Chief McFadden of the Lewisville Police Department. Gambling is illegal, Jimmy and Susan Elmore, you need to shut down or get into compliance. You need to shut down and pull out. This is your chance. Or we're going to shut you down, and we're going to seize your eight-liners and your machines. They had the chance to shut down, and they chose not to. They were making $20,000 a week at least. They chose not to shut down. I think Chief McFadden was more than fair to the Elmores. He gave them—
>
> . . . .
>
> . . . You get to decide. Do you think Chief Elmore [sic] was pretty fair to—
>
> . . . .
>
> Do you think he was fair? He didn't have to send them a letter saying, look, you're out of compliance; this is illegal; shut down or get in compliance. He didn't have to do that. He could have

---

16. *See id.*

17. *James v. State,* 102 S.W.3d 162, 179 (Tex. App.-Fort Worth 2003, pet. filed).

just gone in right then and there, seized all the equipment, and closed them down, but he gave them a chance.

. . . .

... He gave them a chance when he didn't have to. What did they do with that chance? They chose to ignore it. Susan Elmore signed this letter [from McFadden]. Sure Jimmy saw it too; they're married. And they chose to ignore that letter. They chose to proceed on running their casino in Lewisville, Texas, right here in your backyard.

The State continued in this tenor, and in rebuttal argument invited the jury to take McFadden's letter into the jury room with them. Appellant argued that the machines were not gambling devices and that, if they were, there was no intent to operate illegal gambling devices. Since intent was the contested issue, the letter responding to McFadden's notice was a crucial piece of defense evidence.

Appellant's letter indicates that she shut down the business, reconfigured the machines, and did not ignore McFadden's warning. Moreover, the letter creates a real question of intent. The State's argument was, therefore, misleading and knowingly false. Additionally, even though Chief McFadden's letter was admitted on a limited basis, despite timely and proper objection, the trial court failed to include a limiting instruction in the jury charge.[18] The jury therefore could consider the State's letter for all purposes during deliberations but did not have the benefit of considering the Elmores' response to the letter.

For all of the above reasons, we are compelled to hold that the trial court's abuse of discretion in excluding Defendant's Exhibit Number One affected Appellant's substantial rights, prevented her from adequately presenting her defense, and substantially and injuriously affected the jury's verdict.[19] Consequently, we sustain Appellant's second issue. In light of our disposition of this issue, we do not reach Appellant's fourth issue in these cases.[20]

## CONCLUSION

Having held that the trial court abused its discretion by excluding the responsive letter written by Appellant and that this error affected Appellant's substantial rights, we reverse the trial court's judgments and remand these cases to the trial court for a new trial.

---

18. *See Rankin v. State,* 974 S.W.2d 707, 712 n. 3 (Tex.Crim.App.1996); *see also* TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp. 2003).

19. *See James,* 102 S.W.3d at 179.

20. *See* TEX.R.APP. P. 47.1.